FILED
IN CLERK'S OFFICE

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

U.S. DISTRICT COURT
DISTRICT OF MASS.

IN RE EXHAUSTLESS INC.

Case No.

Judge:

# DECLARATION OF STEVEN P. ENDRES

I, Steven P. Endres, declare as follows:

1. As majority shareholder, I bring this pro se derivative action pursuant to FRCP Rule 23.1 on behalf of Exhaustless Inc.

2. Since its incorporation in the State of Delaware on December 3, 2012, to today, I have owned 5,940,000 of the 6,240,000 outstanding shares, or 95.2%, of Exhaustless Inc. The remaining shares have been owned since its formation by Sharon Doherty of 3732 Tejon St. Denver, Colorado 80211, sharon@exhaustless.com, 1 (214) 334-4917. Both Endres and Doherty are citizens of the U.S.A.

3. Since its formation to today, I have been the sole director of Exhaustless Inc.

4. Since its formation to today, I have been the Chief Executive Officer and Doherty has been the Chief Financial Officer of Exhaustless, Inc. Since its formation to today, Endres and Doherty have been the only employees of Exhaustless.

1

5.      This derivative action is not collusive to confer jurisdiction that the court would otherwise lack.

6.      Exhaustless, Inc. has invested significant time, energy, and money in exploring innovative ways to solve the dual problems of increasing the flight capacity of constrained airspaces and of implementing a competitive market allocation of airspace reservations to the public. As CEO of Exhaustless, I led the technical, market, and legal research, as well as the intellectual property, engineering, and development effort to traverse the technical limitations and illegal obstructions currently facing the air transportation system. I conceived the market strategy for and led the development of Exhaustless' competitive operating standard, called Aviation 2.0 Operating Standard (A2OS). I bring this derivative action to enforce Exhaustless' right to collect market-clearing premiums in transportation.

7.      Exhaustless Inc. has attempted to secure contingent legal representation to bring its fifth amendment takings claim to this court, but we have been unsuccessful because every attorney contacted: (a) has perceived it had a conflict of interest because they represent an air carrier; (b) has no experience in this court; (c) does not represent clients on contingency; (d) are unsure how to interpret the U.S. Court of Appeals for the D.C. Circuit Court reaching the merits while claiming lack of standing for redressability, even though the Court in oral arguments said that it would address the merits of any remaining legal hurdles; or (e) has not stated a reason. Other attorneys expressed interest in either selling the business to a consortium of carriers or waiting for class action opportunities from related ongoing cases. Attorneys we have recently attempted to engage have not responded.

8.      I have attempted to secure litigation financing so that Exhaustless Inc. could hire an attorney to bring its fifth amendment takings claim to this court, but I have been unsuccessful.

One firm expressed interest once the process patent is issued for Exhaustless' market-clearing process. But after 6-years invested in prosecuting this patent, the PTAB affirmed a 35 U.S.C. §101 patent rejection based on guidance documents — prolonging this market failure and delaying the new commerce of congestion-prevention pricing. The confusion over the public's property rights to the airspace, and over the role of private rights in transportation, informs attorneys' assessment of risk in deciding whether to take on our case. In other words, the market failure, embedded in the present claim, is precluding the flow of funds that we need to fund litigation to overcome the market failure.

9.     I do not have the resources to train attorneys on my rights under the U.S. Constitution, the history of Title 49, and the history of the market failure that informed my investment.

10.    Legal knowledge is very specific to this market failure and its remedy as it spans case law across the Supreme Court, this court, the federal circuit, bankruptcy court, and the D.C. circuit. I know the law and the facts of this case to best represent this action derivatively on behalf of Exhaustless Inc. before this court. I now seek to enforce a declaration from the U.S. Court of Appeals for the D.C. Circuit for Exhaustless' service to clear excess market demand in transportation by collecting demand-calibrated premiums.

11.    I have filed, or will soon file, a claim for compensation under the fifth amendment for a taking of Exhaustless Inc.'s proprietary right — to allocate the market of reservations to use the public's airspace — in the U.S. Court of Federal Claims.

12.    Endres and Doherty, and their families, have invested over eleven years of effort and over $800,000 to solve the conjoined problems of airspace reservation allocation and congestion delay that Congress highlighted in 2008 in a hearing of the House of Representatives

Subcommittee on Aviation of the Committee on Transportation and Infrastructure and in a subsequent Joint Economic Committee Report. Exhaustless would have started to competitively allocate the airspace capacity in 2018, but the FAA continued to illegally grant the reservations to use the public's airspace by the grandfathering rules of a carrier agreement.

13.     Exhaustless has the will, desire, and ability to invest our time and money to correct the market failure in airspace capacity allocation which is prolonged by carrier's misrepresentation of property rights to the airspace, creating the problems as predicted by the Supreme Court in *Causby* in 1946.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 30, 2023, in Ann Arbor, Michigan.

*/s/ Steven P. Endres*
/s/ Steven P. Endres
Steven P. Endres – PRO SE

4338 Hillside Dr
Ann Arbor, Michigan 48105
steve@exhaustless.com
1 (734) 945-9231