**Attachment 2**

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

STEVEN P. ENDRES, derivatively

on behalf of EXHAUSTLESS INC.

Plaintiff,

v.

ASHLEY MOODY, et al

Defendants.

Case No. 1:23-cv-12051-AK

## PLAINTIFF'S RESPONSE TO REQUEST BY EMPLOYEE OF NYC TO VOLUNTARILY DISMISS NYC AND CROSSCLAIM

An attorney for the City of New York, New York (NYC) states that NYC merely leases the land to the Port Authority of New York and New Jersey, who operates the airport, and that the complaint does not allege any basis for the City's liability, so requests Plaintiff to voluntarily dismiss it from the complaint.

Plaintiff will not voluntarily dismiss the City of New York, New York (NYC) at this time; NYC and the City of Newark as landlords are collecting revenue from their lease agreements with the PANYNJ, which is collecting revenue by leasing airport infrastructure to carriers pursuant to the International Air Transport

1

Association's Worldwide Slot Guidelines (IATA WSG)[1] — rather than pursuant to antitrust law and 49 U.S.C. Parts A (§40101 *et seq*) and B (§47101 *et seq*) — and is thereby interfering in "commerce with foreign Nations, and among the several States, and with the Indian Tribes,"[2] which exceeds the authority of its bi-state agreement with Congress.

      Plaintiff does not have access to the NYC-PANYNJ lease agreement and so cannot make assumptions as to its terms, including how it may or may not be influenced by, or influencing, the IATA WSG or the terms of the PANYNJ's lease agreements with carriers.  A previous state audit report of PANYNJ's compliance with NYC's lease terms referenced a revenue sharing provision for scheduled airline terminal rentals and flight fees.[3]  A percentage of revenue on domestic and foreign commerce paid to NYC would be an impost or duty on imports or exports, requiring consent of the Congress and payment to the U.S. Treasury, pursuant to U.S. Const. art. I, § 10, cl.2, and/or a duty of tonnage requiring consent of the Congress, pursuant to U.S. Const. art. I, § 10, cl.3.  *See, e.g., Polar Tankers, Inc. v. City of Valdez*, 557 U.S. 1 (2009) ("The Court over the course of many years has consistently interpreted the language of the Clause in light of its purpose, a purpose that mirrors the intent of other constitutional provisions which, like the Tonnage Clause itself, seek to restrain the states themselves from the exercise of the taxing

---

[1] *See* IATA Worldwide Slot Guidelines, 9th Edition (Effective Jan. 1, 2019), Dkt. FAA-2020-0862 (Dec. 17, 2020).
[2] U.S. Const. art I, § 8, cl. 3.
[3] *See* New York State Office of the State Comptroller, Division of State Government Accountability, Report 2014-S-28 at 1 (April 2017).

2

power injuriously to the interests of each other." (internal quotation marks and citations omitted)).

Plaintiff also does not have access to the PANYNJ lease agreements with carriers, and so cannot make assumptions as to their terms. Reports by airlines suggest that the PANYNJ leases gates to these grandfathered airlines for terms of decades, excluding other carriers — even though the term of the airspace reservation under the IATA WSG is one IATA carrier scheduling season of approximately 6-months.[4] Each Defendant Air Carrier has voluntarily decided not to recognize the right of use assets and liabilities related to these airport infrastructure lease agreements on their balance sheets, nor to disclose them.[5]

The case law cited by the attorney for NYC is not applicable to the instant complaint; *Paskar v. FAA*, 478 Fed. Appx. 707 (2d Cir. 2012) - Summary Order, was a nonprecedential summary order denying review of an FAA order. *City of New York v. Long Island Airports Limousine Service Corp.*, 91 A.D.2d 1149, 458 N.Y.S.2d

---

[4] *See, e.g.*, United Airlines Holdings, Inc. SEC Form 10-K for 2022, Item 2 at 36 ("United leases gates, hangar sites, terminal buildings and other airport facilities in the municipalities it serves. United has major terminal facility leases at SFO, IAD, ORD, LAX, DEN, EWR, IAH and GUM with expiration dates ranging from 2023 through 2053."). *See also*, Newark Liberty International Airport, Airline Competition Plan Update, 2 (Feb. 1, 2013), at https://www.panynj.gov/airports/en/operator-resources.html ("As of January 1, 2013 EWR consists of 109 gates, 87 are exclusively leased and 22 are common use.").

[5] *See, e.g.*, American Airlines Group Inc, SEC Form 10-K for 2022, (Feb. 22, 2023), Notes to Consolidated Financial Statements, Note 1(i) at 94 ("Operating leases are included in operating lease right-of-use (ROU) assets, current operating lease liabilities and noncurrent operating lease liabilities on our consolidated balance sheets.") and Note 5 at 111 ( "At each airport where we conduct flight operations, we have agreements... for the use of passenger, operations and baggage handling space as well as runways and taxiways. These agreements, particularly in the U.S., often contain provisions for periodic adjustments to rates and charges applicable under such agreements. These rates and charges also vary with our level of operations and the operations of the airport. Because of the variable nature of these rates, these leases are not recorded on our consolidated balance sheets as a ROU asset or a lease liability.").

751 (App. Div. 3d Dep't 1983) was a case decided in favor of NYC collecting revenue from a motor carrier operating at the airport and which was reversed on rehearing, 96 A.D.2d 998 (N.Y. App. Div. 1983). Neither case addressed interference in commerce among the states or with foreign nations through an agreement among carriers to claim title to the reservations that establish the routes and service level for scheduled air transportation in the public airspace. The controlling case law for the instant Federal issue upholds the clear intent of the Congress to regulate air transportation through competitive markets determining price, route, and service of air carriers; see *U.S. v. Causby*, 328 U.S. 256 (1946), *Va. Pharmacy Bd. v. Va. Consumer Council*, 425 U.S. 748 (1976), *Morales v. Trans World Airlines*, 504 U.S. 374 (1992), and *Exhaustless Inc. v. FAA*, 931 F. 3d. 1209 (D.C. Cir. 2019) referenced in Plaintiff's amended complaint at ECF 17 filed Oct. 2, 2023.

In addition, pursuant to New York state law, NYC is liable if it had knowledge of the unlawful trade of airspace reservations.[6]

---

[6] N.Y. Real Prop. Law § 231 ("The owner of real property, knowingly leasing or giving possession of the same to be used or occupied, wholly or partly, for any unlawful trade, manufacture or business, or knowingly permitting the same to be so used, is liable severally, and also jointly with one or more of the tenants or occupants thereof, for any damage resulting from such unlawful use, occupancy, trade, manufacture or business.").

I declare under penalty of perjury that the foregoing is true and correct.

Signed October 9, 2023.

_____
Steven P. Endres — PRO SE

4338 Hillside Dr
Ann Arbor, Michigan 48105
steve@exhaustless.com
1-(734) 945-9231